UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| WIZARD WORLD, INC.,<br><br>Plaintiff,<br><br>-against-<br><br>GAREB SHAMUS, KENNETH SHAMUS, STEPHEN SHAMUS, PIVOT MEDIA LLC, 4 BROTHERS LLC, IT'S ALL NORMAL LLC, ERIC WEISBLUM, GEM FUNDING LLC, ROBB KNIE, VINCENT LABARBARA, and JOHN DOES 1 – 10,<br><br>Defendants. | C.A. No.<br><br><br>**COMPLAINT** |

Plaintiff Wizard World, Inc. (the "Company" or "Wizard World"), for its Complaint, states, upon knowledge as to itself and upon information and belief as to all other matters and persons, as follows:

INTRODUCTION

1. Plaintiff Wizard World brings this action for declaratory and injunctive relief to prevent defendants' ongoing violation of federal securities laws which have caused, and continue to cause, irreparable harm to the many investors who own Wizard World common stock. Even though defendants collectively control nearly 20% of Wizard World's outstanding shares, they have failed to make the disclosures required by federal law, thereby violating Section 13(d) of the Securities Exchange Act of 1934 (15 U.S.C. § 78m(d)), among other things. Indeed, defendants Gareb Shamus and his companies, Pivot Media and 4 Brothers, beneficially own in excess of 10% of Wizard World's outstanding shares, independent of the large positions beneficially owned by the other defendants. But Gareb Shamus and his companies have never filed the disclosures required by Section 13(d). Moreover, defendant Stephen Shamus has

3958004-9

recently announced in a court filing in another case that, in October and November 2016, he and certain other defendants had "knowledge and information that Wizard World shareholders intended to replace the current Board of Directors. . . ." His statements confirm that the Shamus brothers and the other defendants are currently working as a group with the undisclosed intention to influence—or change—control at Wizard World. Immediate injunctive relief is required to compel defendants to make complete disclosure under Section 13(d) of the Exchange Act and to cure their past violations. Equity requires that defendants be enjoined from voting any of their Wizard World shares until they have satisfied these requirements and the markets have been afforded at least ten trading days to absorb the new information.

THE PARTIES

2.      Plaintiff Wizard World is a corporation organized under the laws of the State of Delaware, its principal place of business is in the State of California, and its stock is publicly traded on the OTCBB and OTCQB under the ticker symbol "WIZD." Wizard World organizes pre-eminent comic conventions across North America for fans of pop culture, movies, TV shows, video games, technology, toys, comic books, and graphic novels. Wizard World hosts approximately twenty conventions each year and has gained substantial notoriety for producing conventions that are attractive to attendees, entertainment companies, gaming and toy companies, publishers, retailers, and celebrities. Wizard World currently has approximately 68,535,036 common shares issued and outstanding.

3.      Defendant Gareb Shamus is an individual residing in Bergen County, State of New Jersey. Gareb Shamus is the founder and former CEO of Wizard World. He also is listed in Wizard World's record of shareholders as the owner of defendants Pivot Media LLC and 4 Brothers LLC, both of which are operated out of Gareb Shamus's residence in Bergen County, State of New Jersey.

2

4.    Defendant Pivot Media LLC ("Pivot Media") is a Delaware limited liability company with a principal place of business in Bergen County, State of New Jersey.  It is owned and managed by Gareb Shamus.

5.    Defendant 4 Brothers LLC ("4 Brothers") is a Delaware limited liability company with a principal place of business in Bergen County, State of New Jersey.  It is controlled by defendant Gareb Shamus.

6.    Defendant Kenneth Shamus is an individual residing in Bergen County, State of New Jersey.  Kenneth Shamus was a member of Wizard World's board of directors from March 17, 2013 until October 27, 2016, when he abruptly resigned after the Company terminated his brother, defendant Stephen Shamus.

7.    Defendant Stephen Shamus is an individual residing in New York County, State of New York.  Stephen Shamus served as Wizard World's Chief Marking Officer for more than a decade, until his termination on October 27, 2016.  He is also an owner and manager of defendant It's all Normal LLC.

8.    Defendants Stephen Shamus, Kenneth Shamus, and Gareb Shamus are referred to herein as the "Shamus Brothers."

9.    Defendant It's All Normal LLC ("IAN LLC") is a Delaware limited liability company with a principal place of business in New York County, State of New York.  IAN LLC is owned and managed by Stephen Shamus.

10.    Defendant Eric Weisblum is an individual residing in Bergen County, State of New Jersey.  He is a longstanding friend of the Shamus Brothers and beneficially owns a large block of Wizard World shares.

3958004-9

11. Defendant Gem Funding LLC ("Gem Funding") is a Delaware limited liability company with a principal place of business in Bergen County, State of New Jersey. Gem Funding is owned by Weisblum's spouse but subject to the control of Eric Weisblum.

12. Defendant Robb Knie is an individual residing in Bergen County, State of New Jersey. Mr. Knie is also a longstanding friend of the Shamus Brothers and beneficially owns a large block of Wizard World shares.

13. Defendant Vincent Labarbara is an individual residing in the State of New Jersey. Mr. Labarbara owns and controls a large block of Wizard World shares through his firm Network 1 Financial Securities, Inc., a broker-dealer.

14. Defendants John Does 1 – 10 are persons, the identities of whom are currently unknown, who are Wizard World shareholders and have acted and are acting in concert with the Defendants in furtherance of their objective to effect a change in control of Wizard World, among other things.

## JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction over this matter pursuant to Section 17 of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78aa(a), which confers upon the district courts of the United States the "exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or constituting the violation occurred."

16. Venue is proper in this District pursuant to Section 17 of the Exchange Act, 15 U.S.C. § 78aa(a) because one or more of the Defendants are inhabitants of this District, pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Wizard World's claims occurred in this District, or in the alternative pursuant to 28 U.S.C.

4

3958004-9

§ 1391(b)(3) because there is no district in which this action may otherwise be brought and at least one defendant resides in this District.

17. Declaratory relief is appropriate pursuant to 28 U.S.C. § 2201 because an actual controversy exists regarding Defendants' fraudulent scheme under Section 13(d) of the Exchange Act and the rules and regulations promulgated thereunder.

FACTUAL ALLEGATIONS

18. Section 13(d) of the Exchange Act, 15 U.S.C. § 78m(d), and SEC Rule 13d-1 promulgated thereunder (17 C.F.R. § 240.13d-1), require that any person acquiring beneficial ownership of five percent or more of any class of securities of any company registered under Section 12 of the Exchange Act, 15 U.S.C. § 78l, must file a Schedule 13D with the SEC and any national exchange on which the Company's shares are registered (in this case the NasdaqCM) within ten days after surpassing the five-percent threshold.

19. On his Schedule 13D, the filer must fully and truthfully disclose, among other things, his purposes, plans, and intentions with respect to the acquisition of such shares (Item 4), any agreements, arrangements or understandings he has with others concerning the securities (Item 6), and the aggregate amount of shares he beneficially owns (Item 5).

20. SEC Rule 12b-20 (17 C.F.R. § 240.12b-20) specifically requires that the reporting persons also disclose "such further material information" as is necessary to make the information required in the Schedule 13D not misleading in light of the circumstances in which the required statements are made.

21. The purpose of Section 13(d) is to alert the marketplace to material aggregations of securities that are indicative of a potential shift in corporate control and to provide investors with the information required to make informed decisions concerning the future of their investment. In order to prevent a group of investors from surreptitiously accumulating more than

3958004-9

five percent of an issuer's equity through multiple buyers, Section 13(d) and the rules promulgated thereunder require that any such "group" acting together discloses all group members, their aggregate holdings, and the terms of any agreements or understandings among them with respect to the targeted company.

22.     As described below, Defendants' failure to comply with these provisions has thwarted the purpose of Section 13(d) and has deprived Wizard World's public investors of the protections these securities laws are intended to afford.

<u>Gareb Shamus's Share Ownership</u>

23.     Defendant Gareb Shamus was the original founder and CEO of Wizard Conventions, Inc., a producer of pop culture and multimedia conventions across the United States.  He also served as CEO and majority shareholder of its successor, Kick The Can Corp., an entity in which defendants Weisblum and Knie also invested.  In December 2010, Gareb Shamus and his fellow shareholders in Kick The Can Corp. entered into a Share Exchange Agreement with Wizard World, under which Wizard World issued approximately 33.42 million shares, bringing its total outstanding shares to 35 million.  After the Share Exchange, Gareb Shamus beneficially owned approximately 56% of the shares of Wizard World, with the vast amount held through his privately owned company, Kicking The Can LLC.  Defendants Robb Knie and Eric Weisblum also received Wizard World shares at this time, with Weisblum receiving 2.15 million shares (6.13%) and Knie receiving 2.4 million shares (6.85%).  Defendant GEM Funding LLC, controlled by Weisblum's spouse, held another 1.95 million shares, representing 5.56% of the outstanding shares.  None of these persons filed a Schedule 13D or 13G at the time they acquired these shares.

24.     Upon consummation of the Share Exchange, Gareb Shamus became the CEO and a Director of Wizard World.  Defendant Stephen Shamus was the Chief Marketing Officer for

6

3958004-9

Kick the Can Corp. and after the Share Exchange assumed those duties at Wizard World, reporting to his brother Gareb.

25.    Defendant Gareb Shamus resigned as an Officer and Director of Wizard World on December 1, 2011, effective at year-end.  In connection with its annual report for 2011, defendant Gareb Shamus advised Wizard World that he beneficially owned approximately 27% of Wizard World's outstanding shares, held through three entities:  4 Brothers (approximately 3.35 million shares representing 9.6%); IAN LLC (approximately 2.4 million shares representing 6.8%) and Pivot Media LLC (approximately 3.8 million shares representing 10.9%).  Gareb Shamus served as the Managing Member of each of these entities and had sole voting and dispositive power over their Wizard World shares.

26.    Defendant Gareb Shamus is a seasoned securities player who has participated as an investor and director in multiple public companies and, for those companies, has filed Forms 3 and 4 under Section 16(a) of the Exchange Act and a Schedule 13D.  Gareb Shamus is thus fully aware of his legal obligation to report both his share ownership as well as his arrangements involving his large block of Wizard World shares.  At no point did Gareb Shamus or any of his entities file a Schedule 13D, disclosing the full ownership of his shares and any agreements or arrangements with respect to those securities or his plans regarding Wizard World.  Nor did Gareb Shamus ever file a Form 3 upon his election to the Board of Wizard World or any subsequent forms required by Section 16(a) of the Exchange Act, in connection with any subsequent transfers of his shares.

<u>The Shareholdings of Kenneth and Stephen Shamus</u>

27.    Since the Share Exchange, Gareb Shamus has transferred the Wizard World shares owned by Kicking The Can LLC to other companies that he manages and in which the Shamus Brothers have interests, including 4 Brothers, IAN LLC, and Pivot Media.  Gareb has

7

never made public disclosure of these arrangements, also in violation of Section 13(d) of the Exchange Act.

28.     After Gareb Shamus's resignation in December 2011, Stephen Shamus continued to serve as the Chief Marketing Officer for Wizard World. Through Stephen Shamus's presence at Wizard World, Gareb Shamus was able to continue to monitor corporate developments. Anxious to protect his sizable interest in the Company, Gareb Shamus supported his brother, Kenneth Shamus, in his election to Wizard World's Board on March 17, 2013. At the time, Kenneth Shamus reported in a Form 3 filed October 16, 2013 that he beneficially owned 2,000,000 shares of Wizard World. According to his Form 3 filing, Kenneth Shamus held his Wizard World shares through Kicking The Can LLC, 4 Brothers, IAN LLC, and Pivot Media, without disclosing his arrangements with these entities and their principal, Gareb Shamus.

29.     During this same time period, Gareb Shamus disclosed to Wizard World that he was the beneficial owner of approximately 9.58 million shares, representing 18.65% of the outstanding shares, comprised of approximately 3.8 million shares held by Pivot Media, 2.4 million shares held by IAN LLC, and 3.4 million shares held by 4 Brothers. Gareb Shamus again violated Section 13(d) by not filing a Schedule 13D disclosing these transfers and all arrangements and agreements with his brothers regarding these transfers.

30.     While these entities advised Wizard World the following year that their ownership interests had not changed, Kenneth Shamus disclosed that he was the beneficial owner of an additional 1.46 million shares, a figure that purportedly included shares owned by 4 Brothers. Neither Gareb Shamus nor Kenneth Shamus have disclosed their voting and ownership arrangements regarding these shares. Throughout, Kenneth Shamus held himself out

8

3958004-9

as a representative and spokesperson for the large block of shares held by Gareb Shamus and his entities and by the Shamus Family.

31.    For the Company's 2015 Annual Report, Kenneth Shamus claimed that he was the beneficial owner of 1,462,750 shares representing 2.9% of the outstanding shares. These figures included shares held by 4 Brothers through undisclosed arrangements with that defendant. Stephen Shamus reported that he was the beneficial owner of 5.5% of the outstanding shares, including shares held by IAN LLC, another Gareb Shamus entity. Again neither the Shamus Brothers nor IAN LLC disclosed their agreements and arrangements regarding these shares on a Schedule 13D.

<u>Defendants' Plans to Influence Control</u>

32.    On or about April 19, 2016, Wizard World's Chief Executive Officer, John Macaluso, resigned. John D. Maatta, an industry veteran with decades of experience in the entertainment industry both as an entertainment attorney and as executive and operator of entertainment entities was appointed to replace him. Subsequent to Mr. Maatta's appointment, Stephen Shamus expressed his upset that he had been "passed-over three times" to operate Wizard World as its CEO, stating his pique at the dread of "having to train another management team." Stephen Shamus commenced a course of conduct which was petulant, obstructive, and harmful to the operations of Wizard World. His poor behavior came to a denouement when he ultimately refused to communicate with management, publicly stating his intention to resign from the Company. On October 27, 2016, Wizard World terminated Stephen Shamus for cause. On the same date, Kenneth Shamus resigned as a director.

33.    On or about May 19, 2016, within days of Mr. Maatta's appointment as CEO, defendants Weisblum and Labarbara forced a meeting with Wizard World management at the New York Hilton. At that meeting, Weisblum and Labarbara expressed little interest in the

3958004-9

Company's actual business and were instead focused on whether the Company could issue press releases on matters they thought might increase the share price. Labarbara claimed to represent a large block of shares held through his firm, Network 1 Financial Securities, Inc. ("Network 1"), a broker-dealer based in New Jersey. Weisblum and Labarbara wanted the Company to begin immediately a public relations campaign, something they claimed would lead to an increase in share price. The agitation over the issuance of press releases continued over the summer when requests were made to issue releases praising former management and crowing about objectively marginal quarterly operating results. Company management, attempting to rebuild and grow its business, refused the pressure to issue press releases that were not warranted in order to satisfy the phantom motivations of Weisblum and Labarbara. This conduct continued through the fall when Weisblum and Labarbara again demanded a meeting. Management responded that it would meet provided that Weisblum and Labarbara would sign customary non-disclosure agreements, which they refused to do. During a call that ensued, Weisblum and Labarbara expressed little interest in the business of the Company or the work being done to build a very successful business, but again pressed for the issuance of press releases apparently intended to influence the stock price. Wizard Management refused their demands.

34. Having been rebuffed by Wizard World management, defendants Weisblum and Labarbara decided to join forces with the Shamus Brothers to pursue a change in the Board and to install Stephen Shamus as the new CEO. As Stephen Shamus's own statements confirm, these two defendants, along with defendant Robb Knie, planned to team up with the Shamus Brothers to take control of Wizard World. The Company regularly held its annual meetings in the fourth quarter of the year. A board member of Wizard World who was employed by Weisblum began to push for a shareholder meeting. Defendants thus anticipated that a shareholder meeting would

10

3958004-9

occur shortly and agreed to work together to determine its outcome. Their plan has not borne fruit only because Wizard World has yet to schedule its 2016 annual meeting.

35. Defendants Kenneth Shamus and Stephen Shamus likewise perceived an opportunity to take control of the company and install Stephen Shamus as CEO, based on the large block of shares held collectively by the Shamus Brothers and by coordinating their efforts with long-standing friends and shareholders, defendants Weisblum and Knie. Indeed, in a recent court filing in the litigation over his termination, Stephen Shamus has alleged that each of Weisblum, Knie, and Vincent Labarbara, have "knowledge and information that Wizard World shareholders intended to replace the current Board of Directors . . . ." Any such knowledge could only be based upon coordination, support, and agreement with the Shamus Brothers.

36. On December 1, 2016, another public company, Jerrick Media Holdings, Inc. ("Jerrick Media") issued a press release announcing its intent to acquire Wizard World. Jerrick Media is financed by Mr. Labarbara's company, Network 1, and the press release was intended to encourage shareholders to purchase shares of Wizard World in order to then support the anticipated proxy contest by the Shamus Brothers and the other defendants. The press release was hopelessly misleading, as Wizard World had no intention of being acquired by Jerrick Media and the suggestion that a deal was either imminent or in the works was without the slightest factual basis. Indeed, Jerrick Media had no contacts at all with Wizard World before or after the release. Apparently and incredibly, when Defendants could not strong-arm the Company's management to issue press releases not supported by any business justification, they themselves took the brazen and reckless step of generating their own press release in furtherance of their plan and own personal pecuniary motives.

3958004-9

37.     Each of the Defendants is a bad actor who has engaged in willful violations of the securities laws.  The Weisblum, Knie, Labarbara, Shamus Brothers group has engaged in conduct designed to advance their interests at the expense of Wizard World and its shareholders.  Their conduct is believed to involve the manufacture of fraudulent and defamatory alleged insider information passed to third party bloggers and press outlets in furtherance of their wrongful scheme and objectives.  The false stories are libelous under the laws of the United States and the United Kingdom, which is where at least some of the false stories originated.  They were placed with the specific goal of discrediting Wizard World senior management in order to further the proxy context that Defendants were then pursuing.

38.     The provisions of Section 13(d) require Defendants to file full and complete disclosure concerning, among other things, their intentions, agreements, and acts related to the change of control at Wizard World that they seek.  Their failure to fulfill their filing and disclosure obligations has deprived the market of the full and complete disclosures—namely that Defendants have agreed to effect a change of control of Wizard World by replacing its current management and board of directors in order to benefit Defendants at the expense of the minority shareholders.

39.     Injunctive relief is critical here and necessary not only for the protection of other Wizard World shareholders, but also to protect the investing public from Defendants' ongoing violations of the securities laws.  Defendants must be enjoined from exercising any shareholder rights until (a) they file the full and complete disclosures required by Section 13(d), and (b) the market has sufficient time to cool off after receiving, reviewing, and correcting for those disclosures.

3958004-9

**FIRST CAUSE OF ACTION**
**Violations of Section 13(d) of the Exchange Act and SEC Rules 13d-1**
**(17 C.F.R. § 240.13d-1) and 13d-5 (17 C.F.R. § 240.13d-5)**
**Against the Gareb Shamus-Pivot Media-4 Brothers Group**

40.    Plaintiff repeats the allegations in paragraphs 1 – 39.

41.    Defendants Pivot Media beneficially owns at least 3,830,000 shares of Wizard World, representing 5.59% of all outstanding shares of Wizard World common stock.  Defendant 4 Brothers beneficially owns at least 3,351,250 shares of Wizard World, representing 4.89%. Both entities are controlled by defendant Gareb Shamus, who appears as their principal and primary contact on the Company's certified list of shareholders.

42.    In violation of Section 13(d) of the Exchange Act, SEC Rule 13d-1 (17 C.F.R. § 240.13d-1), and SEC Rule 13d-5 (17 C.F.R. § 240.13d-5), these defendants have failed to file or cause to be filed a Schedule 13D disclosing their aggregate beneficial ownership of Wizard World common stock as well as their arrangements with other defendants, including any plans to effect a change in control of Wizard World.

43.    These defendants' failure to file a Schedule 13D disclosing their beneficial ownership as well as their agreements and plans has deprived Wizard World shareholders and the marketplace of the full and accurate information to which they are entitled under the securities laws and both Wizard World and its shareholders have been, are now, and will continue to be irreparably harmed absent these defendants' compliance with the securities laws in this respect.

44.    Wizard World has no adequate remedy at law.

45.    Accordingly, Wizard World requests and is entitled to (a) a declaration that these defendants have violated Section 13(d) of the Exchange Act and SEC Rules 13d-1 and 13d-5; (b) an order directing these defendants to file complete and accurate disclosures required by Section

13

3958004-9

13(d) of the Exchange Act and SEC Rules 13d-1 and 13d-5 both now and for prior years when arrangements were made; (c) an order enjoining these defendants from any trading in Wizard World stock until they file the complete and accurate disclosures required by Section 13(d) of the Exchange Act and SEC Rules 13d-1 and 13d-5; (d) an order enjoining these defendants and other persons acting in concert with them from exercising any rights as Wizard World stockholders, including any voting rights, until they file the complete and accurate disclosures required by Section 13(d) of the Exchange Act and SEC Rules 13d-1 and 13d-5 and the market has had a sufficient cooling off period within which to absorb and correct these defendants' failure to comply with Section 13(d) of the Exchange Act and SEC Rules 13d-1 and 13d-5; and (e) a permanent injunction preventing these defendants from making any misstatements or omissions in connection with, or otherwise related to, their Schedule 13D filings.

<u>**SECOND CAUSE OF ACTION**</u>
**Violations of Section 13(d) of the Exchange Act and SEC Rules 13d-1**
**(17 C.F.R. § 240.13d-1) and 13d-5 (17 C.F.R. § 240.13d-5)**
**Against the Shamus Brothers Group**

46.    Plaintiff repeats the allegations in paragraphs 1 – 39.

47.    Defendants Gareb Shamus, Kenneth Shamus, Stephen Shamus, Pivot Media, IAN LLC, and 4 Brothers beneficially own at least 10,369,000 shares of Wizard World, representing 15.13% of all outstanding shares of Wizard World common stock, in the aggregate.

48.    In violation of Section 13(d) of the Exchange Act, SEC Rule 13d-1, and SEC Rule 13d-5, these defendants have failed to file or cause to be filed a Schedule 13D disclosing their aggregate beneficial ownership of Wizard World common stock as well as their agreements and plans involving Wizard World shares.

49.    These defendants' failure to file a Schedule 13D has deprived Wizard World shareholders and the marketplace of the full and accurate information to which they are entitled

14

under the securities laws and both Wizard World and its shareholders have been, are now, and will continue to be irreparably harmed absent these defendants' compliance with the securities laws in this respect.

50.    Wizard World has no adequate remedy at law.

51.    Accordingly, Wizard World requests and is entitled to (a) a declaration that these defendants have violated Section 13(d) of the Exchange Act and SEC Rules 13d-1 and 13d-5; (b) an order directing these defendants to file complete and accurate disclosures required by Section 13(d) of the Exchange Act and SEC Rules 13d-1 and 13d-5; (c) an order enjoining these defendants from any trading in Wizard World stock until they file the complete and accurate disclosures required by Section 13(d) of the Exchange Act and SEC Rules 13d-1 and 13d-5; (d) an order enjoining these defendants and other persons acting in concert with them from exercising any rights as Wizard World stockholders, including any voting rights, until they file the complete and accurate disclosures required by Section 13(d) of the Exchange Act and SEC Rules 13d-1 and 13d-5 and the market has had a sufficient cooling off period within which to absorb and correct these defendants' failure to comply with Section 13(d) of the Exchange Act and SEC Rules 13d-1 and 13d-5; and (e) a permanent injunction preventing these defendants from making any misstatements or omissions in connection with, or otherwise related to, their Schedule 13D filings.

## THIRD CAUSE OF ACTION
### Violations of Section 13(d) of the Exchange Act and SEC Rules 13d-1 (17 C.F.R. § 240.13d-1) and 13d-5 (17 C.F.R. § 240.13d-5) Against All Defendants as a Group

52.    Plaintiff repeats the allegations in paragraphs 1 – 39.

53.    Defendants beneficially own at least 13,319,000 shares of Wizard World, representing 19.43% of all outstanding shares of Wizard World common stock, in the aggregate.

15

3958004-9

54.     In violation of Section 13(d) of the Exchange Act, SEC Rule 13d-1, and SEC Rule 13d-5, Defendants have failed to file or cause to be filed a Schedule 13D disclosing their aggregate beneficial ownership of Wizard World common stock, their agreements, and their plans to effect a change in control of Wizard World whereby control of the company would be shifted to the Shamus Brothers and persons under their influence.

55.     Defendants' failure to file a Schedule 13D has deprived Wizard World shareholders and the marketplace of the full and accurate information to which they are entitled under the securities laws and both Wizard World and its shareholders have been, are now, and will continue to be irreparably harmed absent Defendants' compliance with the securities laws in this respect.

56.     Wizard World has no adequate remedy at law.

57.     Accordingly, Wizard World requests and is entitled to (a) a declaration that Defendants have violated Section 13(d) of the Exchange Act and SEC Rules 13d-1 and 13d-5; (b) an order directing Defendants to file complete and accurate disclosures required by Section 13(d) of the Exchange Act and SEC Rules 13d-1 and 13d-5; (c) an order enjoining Defendants from any trading in Wizard World stock until they file the complete and accurate disclosures required by Section 13(d) of the Exchange Act and SEC Rules 13d-1 and 13d-5; (d) an order enjoining Defendants and other persons acting in concert with them from exercising any rights as Wizard World stockholders, including any voting rights, until they file the complete and accurate disclosures required by Section 13(d) of the Exchange Act and SEC Rules 13d-1 and 13d-5 and the market has had a sufficient cooling off period within which to absorb and correct Defendants' failure to comply with Section 13(d) of the Exchange Act and SEC Rules 13d-1 and

3958004-9

13d-5; and (e) a permanent injunction preventing Defendants from making any misstatements or omissions in connection with, or otherwise related to, their Schedule 13D filings.

## FOURTH CAUSE OF ACTION
### Violations of Section 14(a) of the Exchange Act and the Rules and Regulations Promulgated Thereunder
### Against All Defendants

58.    Plaintiff repeats the allegations in paragraphs 1 – 39.

59.    Congress and the SEC have designed an extensive regulatory scheme governing proxy solicitations which is designed to ensure that proxy contests be held in a fair and orderly manner so that stockholders may make an informed decision as to how they will vote their shares.  Section 14(a) of the Exchange Act provides that it shall be unlawful for any person to solicit proxies in contravention of the rules and regulations promulgated by the SEC.

60.    Under the SEC's proxy rules, a person or group soliciting proxies is required to provide the disclosures mandated by SEC Rule 14a-101, also known as Schedule 14A Information.  These disclosures are intended to protect shareholders by requiring full disclosure of interested parties, solicitation cost, and other information.

61.    SEC Rule 14a-3, with certain exceptions not applicable here, requires that before a proxy solicitation is made, a written proxy statement containing the information specified in Schedule 14A be filed with the SEC and distributed to each person solicited in connection with any solicitation governed by Section 14(a).  Among other things, the proxy statement must contain information required by Schedule 14A, including (i) certain information as to the persons making such solicitation; (ii) information as to the interest of such persons in the company, including, but not limited to, information as to share ownership of company securities; (iii) information as to the voting securities of the company and the holders thereof; (iv) financial

3958004-9

information with respect to the aforementioned transactions; and (v) whether the proxy is revocable. Each shareholder must be furnished with a written proxy statement.

62.     Upon information and belief, Defendants have solicited and are currently soliciting—by the use of the mails or by means or instrumentalities of interstate commerce or the facilities of a national securities exchange—shareholder proxies to be voted at the next annual meeting or special meeting of Wizard World shareholders, which meeting is not yet scheduled.

63.     Defendants' failure to file a complete and accurate Schedule 14A and complete and accurate proxy materials with the SEC is a material violation of the federal securities laws including Section 14(a) of the Exchange Act and the rules and regulations promulgated thereunder.

64.     Unless Defendants' conduct of ongoing unlawful proxy solicitations is restrained by this Court, Wizard World, its stockholders, and the investing public will continue to be irreparably injured.

65.     Wizard World has no adequate remedy at law.

## DEMAND FOR RELIEF

WHEREFORE, plaintiff Wizard World respectfully requests judgment against Defendants as follows:

A.     Declaring that defendants Gareb Shamus, Pivot Media, and 4 Brothers, as a group, have violated Section 13(d) of the Exchange Act and SEC Rules 13d-1 and 13d-5 by failing to file the complete and accurate disclosures required by Section 13(d) of the Exchange Act and SEC Rules 13d-1 and 13d-5;

B.     Directing that defendants Gareb Shamus, Pivot Media, and 4 Brothers, as a group, file the complete and accurate disclosures required by Section 13(d) of the Exchange Act and SEC Rules 13d-1 and 13d-5;

18

3958004-9

C.     Declaring that defendants Gareb Shamus, Kenneth Shamus, Stephen Shamus, Pivot Media, 4 Brothers, and IAN LLC, as a group, have violated Section 13(d) of the Exchange Act and SEC Rules 13d-1 and 13d-5 by failing to file the complete and accurate disclosures required by Section 13(d) of the Exchange Act and SEC Rules 13d-1 and 13d-5;

D.     Directing that defendants Gareb Shamus, Kenneth Shamus, Stephen Shamus, Pivot Media, 4 Brothers, and IAN LLC, as a group, file the complete and accurate disclosures required by Section 13(d) of the Exchange Act and SEC Rules 13d-1 and 13d-5;

E.     Declaring that defendants Gareb Shamus, Kenneth Shamus, Stephen Shamus, Pivot Media, 4 Brothers, IAN LLC, Weisblum, Knie, and Labarbara, as a group, have violated Section 13(d) of the Exchange Act and SEC Rules 13d-1 and 13d-5 by failing to file the complete and accurate disclosures required by Section 13(d) of the Exchange Act and SEC Rules 13d-1 and 13d-5;

F.     Directing that defendants Gareb Shamus, Kenneth Shamus, Stephen Shamus, Pivot Media, 4 Brothers, IAN LLC, Weisblum, Knie, and Labarbara, as a group, file the complete and accurate disclosures required by Section 13(d) of the Exchange Act and SEC Rules 13d-1 and 13d-5;

G.     Enjoining Defendants and other persons or entities acting in concert with them from exercising any rights as Wizard World shareholders, including their voting rights, until (a) Defendants have filed complete and accurate disclosures required by Section 13(d) of the Exchange Act and SEC Rules 13d-1 and 13d-5, and (b) the market has had a sufficient cooling off period within which to absorb and correct for Defendants' failures to comply with Section 13(d) of the Exchange Act and SEC Rules 13d-1 and 13d-5;

19

3958004-9

H.      Enjoining Defendants and other persons or entities acting in concert with them from directly or indirectly violating Section 14(a) of the Exchange Act and the rules and regulations promulgated thereunder;

I.      Awarding to Wizard World its costs and disbursements incurred in connection with this action, including its reasonable attorneys' fees and experts' fees; and

J.      Awarding to Wizard World all additional relief that this Court determines to be just and proper.

Dated:  New York, New York
        December 16, 2016

                                        OLSHAN FROME WOLOSKY LLP


                                        By:    /s/ Scott Shaffer
                                               Scott Shaffer
                                               *Attorneys for plaintiff*
                                               *Wizard World, Inc.*
                                               744 Broad Street, 16th Floor
                                               Newark, New Jersey 07102
                                               (973) 331-7200

Of Counsel:

OLSHAN FROME WOLOSKY LLP
Thomas J. Fleming*
Peter M. Sartorius*
1325 Avenue of the Americas
New York, New York 10019
(212) 451-2300

* Application for admission *pro hac vice*
forthcoming

20

3958004-9